UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

JEFFRY LEROY, as Co-Guardian of SILVIA LEROY,     Docket No.:
Incapacitated Person, SHIRLEY LICIN, as Co-Guardian of
SILVIA LEROY, Incapacitated Person, and JEFFRY LEROY,    **NOTICE OF REMOVAL**
Individually,

*Plaintiffs,*

-*against*-

HEATHER HUME, M.D., MINDY BRITTNER, M.D., MIRA
JOHN, M.D., MOUNT SINAI HOSPITAL, MARY
TOUSSAINT-MILORD, M.D., KANIZ B. BANU, M.D.,
MAHREEN AKRAM, M.D., JAMIE CELESTIN-
EDWARDS, CNM, BROOKDALE HOSPITAL MEDICAL
CENTER, JILL BERKIN, M.D., and KEVIN TROY, M.D.,

*Defendants.*

------------------------------------------------------------------------X

C O U N S E L O R S:

    Pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1442(a)(1) and 1446 and the Public Readiness

and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d, 247d-6e (2020) and the

Declaration under the Public Readiness and Emergency Preparedness Act for Medical

Countermeasures Against COVID-19, 85 Fed. Reg. 15198-01 (March 17, 2020), defendants

BROOKDALE HOSPITAL MEDICAL CENTER, MARY TOUSSAINT-MILORD, M.D.,

KANIZ B. BANU, M.D., MAHREEN AKRAM, M.D. and JAMIE CELESTIN-EDWARDS,

CNM ("Brookdale Defendants"), by the undersigned attorneys, VIGORITO, BARKER,

PATTERSON, NICHOLS & PORTER, LLP, hereby remove to the United States District Court

for the Eastern District of New York the civil action pending in the Supreme Court of the State of

New York, County of Kings, Index No. 519076/2020. In support of its notice and grounds for

removal, the Brookdale Defendants state as follows:

1.    On October 7, 2020, plaintiffs purchased an Index Number and filed the subject Summons and Complaint. Upon information and belief, on October 13, 2020, the Brookdale Defendants were served with the Summons and Complaint. True and correct copies of the Summons and Complaint are attached hereto as **Exhibit "A"** and constitute the prior pleadings to date, which upon good faith information and belief, seeks damages for physical injuries in excess of $75,000.

2.    Upon information and belief, MINDY BRITTNER, M.D., HEATHER HUME, M.D., MIRA JOHN, M.D., JILL BERKIN, M.D., KEVIN TROY, M.D. and MOUNT SINAI HOSPITAL ("Mt. Sinai Defendants") have yet to answer or otherwise join this action.

3.    This Court has original jurisdiction, since the Complaint arises under Federal law pursuant to 28 U.S.C. §§ 1331, 1336, 1441, 1442(a)(1) and 1446, the PREP Act, 42 U.S.C. §§ 247d6d, 247d-6e (2020), and the Declaration under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198-01 (March 17, 2020). The Brookdale Defendants also incorporate the Advisory Opinions published by the Office of General Counsel of the Department of Health and Human Services ("HHS"), which explains and illustrates the breadth of PREP Act immunity and the PREP Act's broad, express-preemption provision. Thus, the Brookdale Defendants assert Federal Officers Jurisdiction, express and complete federal preemption under the PREP Act and that federal law is a necessary element of the claim for relief.

4.    This Notice of Removal is filed within 30 days after service of the Summons & Complaint upon the Brookdale Defendants and is therefore, timely filed pursuant to 28 U.S.C. § 1446(b).

5.      According to the Summons and Complaint, plaintiffs JEFFRY LEROY and SHIRLEY LICIN are the husband and sister, respectively, of SILVIA LEROY (the "patient") and reside in the State of New Jersey at 2511 Gates Court, Morris Plains, NJ 07950. Plaintiffs further allege that they were appointed co-guardians of SILVIA LEROY on September 15, 2020, by the Superior Court of New Jersey-Probate Park, Morris County. *See* Complaint at ¶ 1.

6.      According to the Summons and Complaint (hereinafter "Complaint"), the Brookdale Defendants are residents of the State of New York and/or are licensed to practice medicine in the State of New York. *See* Complaint at ¶¶ 2-22.

7.      It is alleged that the patient was under the care of the Brookdale Defendants from "on or about" January 22, 2020 until March 31, 2020, when care was transferred to the Mt. Sinai Defendants. *See* Complaint at ¶ 39.

8.      The Complaint alleges that:

At all times mentioned defendants…were grossly negligent and acted with reckless disregard with respect to care and treatment rendered to SILVIA LEROY, including, but not limited to, **not testing for COVID-19 when Dr. Toussaint-Milford explicitly requested that SILVIA LEROY be so tested**, Dr. Toussaint-Milford's failure to follow up on her order for same, and at MOUNT SINAI HOSPITAL, the doctors and medical staff failed to properly monitor SILVIA LEROY, including when she needed more oxygen, had pulmonary embolism, and as set forth below, as applicable to all defendants. (Emphasis added).

*See* Complaint at ¶ 36.

9.      The Complaint continues to claim injuries due to:

[Defendants'] failure to timely and/or properly **appreciate and diagnose symptoms of COVID-19 infection**, **failure to timely test for COVID-19** given [the patient's alleged] symptoms**, failure to properly and timely treat COVID-19 infection**, failure to timely and (sic) **appreciate pulmonary embolism**, failure to timely and properly appreciate Heparin resistance**, failure to timely and properly administers** (sic)**, prescribe, recommend and/or dispense appropriate anticoagulant** (sic), failure to properly monitor, **improperly weaning oxygen**, failure to properly **prevent cardiac arrest**, **failure to diagnose clot**, and the failure

to render timely and/or proper emergency, critical, hematological, and/ or pulmonary care… (Emphasis added).

*See* Complaint at ¶ 39.

10.    The Complaint also contains allegations that defendants were, "negligent in making and/ or failing to make rules and regulations for, and failed to supervise, the treatment of plaintiff." *See* Complaint at ¶ 65.

11.    As it pertains to the Brookdale Defendants specifically, and all defendants generally, the claims for loss in the Complaint arise out of, relate to or result from the use of "covered countermeasures," as defined by the PREP Act.  These claims are subject to broad federal immunity and are preempted by federal law since these claims arise out of, relate to and result from covered countermeasures undertaken by defendants as "program planners" in response to the ongoing and insidious COVID-19 outbreak as defined by federal law.

12.    The clear purpose of the federal action taken by Congress, the Food and Drug Administration ("FDA") and HHS by virtue of the PREP Act, including the recent amendments thereto and the HHS Advisory Opinions, was to embolden health care providers to risk their life/safety, and the life/safety of their families, to combat an incurable (deadly) virus that was and continues to ravage the globe.

13.    The New York metropolitan area was the epicenter of this scourge and required heroic personnel to treat the afflicted and dying. This intent must form the filter through which any legal analysis is undertaken. Although the PREP Act pre-dates COVID-19, the PREP Act was designed to protect medical care providers from the legal risks they assumed to create a societal benefit to the afflicted and dying and to prevent the spread of infectious disease. The Complaint herein specifies <u>exactly</u> the types of claims that were intended to be so protected via a broad-and-sweeping federal immunity.

14.     The following analysis of the specific claims in the Complaint demonstrate that the core allegations are all within the ambit of the PREP Act. The Complaint contains five Causes of Action: malpractice; lack of informed consent; loss of services to co-plaintiff (husband); negligent hiring/improper protocols against Mt. Sinai Hospital; and, negligent hiring/protocols against Brookdale Hospital Medical Center.

15.     The underling allegations comprising the malpractice claim are listed in paragraphs 36 and 39 of the Complaint. *See* Complaint at ¶¶ 36, 39. Every allegation arises from, relates to or results from underlying covered countermeasures as defined in the PREP Act, or from activities arising out of, relating to or resulting from the statutorily protected function of a program planner responding to the COVID-19 pandemic.

16.     The Complaint cites COVID-19 testing-related claims as the primary allegation directed towards the Brookdale Defendants. Crucially, COVID-19 testing is the most uncontestable covered countermeasure under the PREP Act.

17.     All other claims advanced by plaintiffs in the Complaint arise from, relate to or result from covered countermeasures under the PREP ACT, *to wit*:

- failure to appreciate and diagnose symptoms of COVID-19 infection;
- failure to timely test for COVID-19 given (the patient's alleged) symptoms;
- failure to properly and timely treat COVID-19 infection;
- failure to timely and (sic) appreciate pulmonary embolism;
- failure to timely and properly appreciate heparin resistance;
- failure to timely and properly administers (sic), prescribe, recommend and/or dispense appropriate anticoagulant (sic);
- failure to properly monitor;
- improperly weaning oxygen;
- failure to properly prevent cardiac arrest;
- failure to diagnose clot; and
- failure to render timely and/or proper emergency, critical, hematological and/or pulmonary care.

*See* Complaint at ¶ 39.

18.    As more fully explained below, covered countermeasures include any drug, biologic, diagnostic, device or vaccine to treat, mitigate or cure COVID-19, or the transmission of COVID-19. *See* 85 FR 15198. This includes respiratory protective devices and personal protection equipment ("PPE"). *See* 85 FR 21012; *See also* Pub. Law No. 116-127, Sec. 6005.

19.    The primary allegation against the Brookdale Defendants (concerning COVID-19 testing) falls squarely within the statute. *See* Complaint at ¶36.

20.    The plain language of the PREP ACT immunity/preemption also clearly applies to alleged failures to "treat COVID-19 infection," or the resulting "pulmonary embolism," "cardiac arrest" or "proper emergency, critical, hematological and/or pulmonary care" that arose solely from the COVID-19 infection. *See* Complaint at ¶ 39.

21.    The claims that defendants failed to, "timely and properly administers (sic), prescribe, recommend and/or dispense appropriate anticoagulant (sic)," also clearly invoke the immunity/preemption provisions concerning a drug or biologic associated with the treatment, mitigation, cure or transmission of COVID-19. *See* Complaint at ¶ 39.

22.    The claims alleging "improperly weaning off oxygen" also trigger the express plain statutory immunity/preemption for respiratory protective devices related to COVID-19 treatment. *See* Complaint at ¶ 39.

23.    Finally, the allegations concerning improper protocols and practices triggers the immunity for COVID-19 Program Planners (discussed in detail *infra*). *See* Complaint at ¶ 65.

24.    These allegations exclusively arise out of, relate to or result from COVID-19 testing, following COVID-19 infection control guidance and COVID-19 respiratory devices, thereby triggering PREP Act preemption and immunity.

25.     The medical treatment implicated by the allegations in the Complaint are <u>expressly</u> included within those "covered countermeasures" to be afforded broad-and-sweeping federal immunity under the PREP Act. The purpose of the PREP Act is to encourage healthcare providers to risk illness for themselves and their families to provide a societal benefit to the sick and dying. Those risks have not abated despite the passage of time. There is no cure for COVID-19. Many of those who "beat" COVID-19 are suffering long-term mental and physical challenges, the extent of which is not known to science. Mobilizing the healthcare workforce in the face of personal/family risks, free from the threat of financial ruination for their effort, is an important purpose of the PREP Act and can only be effectuated with consistent federal jurisprudence on the application and scope of the federal COVID-19 immunities granted by Congress.

### THE "ARTFUL PLEADING" DOCTRINE PROVIDES CLEAR FEDERAL JURISDICTION

26.     Prevailing federal and state law warrant jurisdiction in the United States District Court.

### a)  Express and Complete Preemption Warrants Federal Jurisdiction

27.     While a plaintiff is ordinarily entitled to choose a state or federal forum and may evade federal jurisdiction by pleading only state law claims, <u>this Court has jurisdiction</u> due to the well-settled doctrine that express or complete preemption is an <u>exception</u> to the well-pleaded complaint rule. *See Metro-Life Ins. Co. v. Taylor,* 481 U.S. 58, 64-64 (1987); *See also NASDAQ OMX Group, Inc. v. UBS Securities, LLC*, 770 F.3d 1010 (2[d] Cir. 2014).[1]

---

[1] Federal jurisdiction requires that <u>only one claim</u> be identified as a federal question. *See* 28 USC § 1367 [supplemental jurisdiction]; *See also Franchise Tax. Bd. V. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983).

28.     The PREP Act is triggered when the HHS Secretary issues a Declaration defining the scope of immunity to a specific pandemic or national emergency, here COVID-19. Such a declaration has been issued for COVID-19.

29.     This has been done prior to COVID-19. For example, a much narrower Declaration was issued in response to H1N1. Nonetheless, this resulted in New York appellate law in favor of complete federal preemption. *See Parker v. St. Lawrence Co. Pub. Health Dept*., 102 A.D.3d 140 (3$^d$ Dep't 2012).

30.     The PREP Act, effective retroactively to February 4, 2020 in response to COVID-19, was designed to provide immunity from liability for extremely broadly-defined "covered countermeasures," including any drug, biologic, diagnostic device or vaccine to treat, mitigate or cure COVID-19, or the transmission of COVID-19. *See* 85 FR 15198.

31.     Respiratory devices were soon added to the list of covered countermeasures (85 FR 21012), and PPE has been explicitly identified as a covered countermeasure. *See* Pub. Law No. 116-127, Sec. 6005. Notably, the FDA has included numerous categories of PPE in their Emergency Use Authorizations related to COVID-19.

32.     Infection control is a covered countermeasure and a recommended activity as defined in the PREP Act. *See* 85 Fed. Reg. 21012. Indeed, the May 19, 2020 Advisory Opinion governing the PREP Act interprets recommended activities broadly, to include, "any activity that is part of an authorized emergency response at the federal, regional, state or local level…. Such activities can be authorized through, among other things, guidance, requests for assistance, agreements, or other arrangements."[2] As a result, the claims alleged in the subject Complaint are subject to complete federal preemption and immunity.

---

[2] https://www.hhs.gov/sites/default/files/prep-act-advisory-opinion-hhs-ogc.pdf

33.     Indeed, Congress <u>explicitly wrote preemption into the PREP Act</u>. The PREP Act, 42 U.S.C. §247d-6d(b)(8)(A) states:

> no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that is different from, *or is in conflict with*, any requirement applicable under this section and… relates to, among other things, use or administration of a covered countermeasure.

(Emphasis in original).

34.     Under 42 U.S.C. §247d-6d(a), any "covered person" enjoys broad immunity for all "claims for loss <u>arising out of, related to, or resulting from</u>" the "administration" or "use" of a "covered countermeasure" as defined by the Secretary of the Department of Health and Human Services.  (Emphasis added).

35.     Defendants generally, and the Brookdale Defendants specifically, are a "covered person" under the PREP Act, including a "qualified person" and a "program planner," pursuant to 42 U.S.C. §247d-6d(i)(2)(B). The PREP Act defines a "qualified person" broadly to include the individually named physicians/defendants herein, *i.e.*, "a licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures…." 42 U.S.C. § 247d-6d(i)(8).[3]

36.     The PREP Act defines a program planner to include:

> …or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration.

42 U.S.C. §247-6d(i)(6).

---

[3] https://www.hhs.gov/sites/default/files/prep-act-advisory-opinion-hhs-ogc.pdf

37.     The broadly-written COVID-19 Declaration explained that a program planner can be a "private sector employer or community group" that "carries out the described activities." 85 Fed. Reg. 15, 198, 15,201. In accordance with prevailing guidance by the CMS, CDC, NY DOH and other guidance, the Brookdale Defendants supervised/administered programs to counter COVID-19, rendering them program planners under the PREP Act.

38.     This sweeping scope of the immunity intended by Congress is perhaps best exemplified by the fact that any act or omission that a potential defendant reasonably believes (a subjective standard) to be a covered countermeasure meets the requirement for immunity. *See* 42 U.S.C §247d-6d(a)(4)(b); *See also* Adv. Op. 2.[4]

39.     While the PREP Act preempts state law, it provides an alternate avenue for plaintiffs in this matter to seek recourse. Any claimant seeking to assert a claim based entirely on covered countermeasures (as here) must first apply for benefits under 42 U.S.C. §247d-6d(a) as an "exclusive" remedy. *See* 42 U.S.C. § 247d-6d(a).

40.     The May 19, 2020 HSS Advisory Opinion[5] (page 2) emphasizes these exclusive, broad federal remedies, which preempt any State claim because the PREP Act, "***replaces*** certain damages claims that would normally be brought in Court with a no-fault compensation system." (emphasis added). The purpose is to provide a compensation system "in place of expensive and uncertain litigation." 42 U.S.C §247-6d(a). Would-be claimants may seek a civil remedy by making a request for benefits under the Countermeasures Injury Compensation Fund ("CICP"). *See id*.

41.     The sole exception to the immunities, "shall be for ***an exclusive Federal*** cause of action against a covered person." 42 U.S.C. §247d-6d(d)(1) (Emphasis added). While willful

---

[4] https://www.hhs.gov/sites/default/files/prep-act-advisory-opinion-hhs-ogc.pdf
[5] https://www.hhs.gov/sites/default/files/prep-act-advisory-opinion-hhs-ogc.pdf

misconduct may escape immunity, the claim may be brought **only** in the Federal court located in the District of Columbia. 42 U.S.C. §247d-6d(e)(1). This scheme, as per the Supreme Court of the United States in *Beneficial Nat. Bank v. Anderson*, 549 U.S. 1, 8 (2003), is evidence of the clear intent for complete preemption.

42.     Robert P. Charrow, the General Counsel of HHS, wrote a definitive Advisory Opinion on October 23, 2020 establishing both federal preemption and triggering of immunity in this instance.[6] The Advisory Opinion addressed: (1) who is a "program planner" under the PREP Act's March 10, 2020 Declaration, as amended; and, (2) the coverage of the PREP Act relating to activities authorized by an "authority having jurisdiction".

43.     The Advisory Opinion acknowledges that the uncertainties regarding public health guidance poses a "potential legal risk for [hospitals and physicians] as they combat the pandemic, restore and strengthen America's economy, ensure that transportation remains available, and provide safe environments for education and worship. Unfortunately, such perceived risks may hinder those essential efforts." *See* Advisory Opinion, p. 1.

44.     The Advisory Opinion concludes that the fear of litigation risks should not hinder the essential efforts of the medical care professionals (such as the defendants in this matter, and specifically the Brookdale Defendants) relative to their COVID-19 response because the "PREP Act exists … to remove legal uncertainty and risk."  (Emphasis added).

45.     A "covered person," such are the Brookdale Defendants, is "immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, related to or resulting from the administration to or the use by and individual of a covered countermeasure." *See* Advisory Opinion, p. 1.

---

[6] https://www.hhs.gov/sites/default/files/advisory-opinion-20-04-hhs-ogc-public-readiness-emergency-preparedness-act.pdf

46.     As applied to COVID-19, a "covered countermeasure" includes any product approved or cleared by the FDA "**and, that are used to address COVID-19 or associated health threats, including harms that COVID-19 might otherwise cause**." (Emphasis added). *See* Advisory Opinion, p. 1.

47.     The instant Complaint clearly articulates claims arising from, related to or resulting from COVID-19 testing <u>and</u> additionally articulates claims arising from the treatment and complications that arose from, related to and resulted from the patient's COVID-19 infection (pulmonary embolism, need for respiratory assistance, cardiac arrest). *See* Complaint ¶¶ 36, 39.

48.     The Advisory Opinion also provides an <u>expansive</u> definition of a "program planner," including any instance when the party or entity is acting in according with "*any*" guidance, unless a law of the guidance claims precedence over other guidance. (Emphasis in original). *See* Advisory Opinion, p. 4.

49.     Crucially, the Advisory Opinion specifically includes <u>an example regarding COVID-19 testing</u>, which is the central issue herein as to the Brookdale Defendants. *See* Advisory Opinion, p. 4.

50.     In the example, the Advisory Opinion describes an instance where federal, state and local authorities issue conflicting guidance on the testing frequency required at universities; no iteration preempts or supersedes the local guidance. If the university follows the local guidance, it will be <u>immune</u> from a lawsuit from a student who contracts COVID-19. This directly relates to plaintiffs' Complaint herein, which alleges failures related to COVID-19 testing by the Brookdale Defendants. *See* Complaint ¶¶ 36, 39.

51.     Attached as **Exhibit "B"** is a letter from the HHS to the State of Nevada that: (1) identifies the broad immunity provided for COVID-19 testing; and, (2) states that, "Under Federal

law, that PREP Act coverage preempts any State or local provision of law or legal requirement that prohibits or effectively prohibits such licensed healthcare practitioners from administering or prescribing FDA-authorized COVID-19 tests…"

52.     This guidance further demonstrates the broad scope of the federal immunity grant to promote a robust and protected ***national*** response to COVID-19. The amended language applies to those countermeasures that "would not have been…used…but for the COVID-19 pandemic, even when the products are …used…to…prevent, treat, or cure health threats or conditions other than COVID-19."

53.     It further discusses how the pandemic has resulted in shortages of certain drugs and devices due to COVID-19:

> [f]illing those shortages caused by COVID-19 reduces the strain on the American healthcare system by mitigating the escalation of adverse health conditions from COVID-19 and non-COVID-19 causes.  And mitigating that escalation conserves limited healthcare resources – from personal protective equipment to healthcare providers – which are essential in the whole-of-Nation response to the COVID-19 pandemic.

54.     Infection control was, and remains, required by both federal and New York State laws/regulations/requirements. While the dates of admission to Brookdale Hospital Medical Center in this case were obscured by plaintiffs in this Complaint, they are known and easy to establish. They will be demonstrated in support of the forthcoming pre-answer proposed Rule 12(b) motion to dismiss based on federal and state immunities.

55.     Taken in total, Congress has <u>unambiguously</u> preempted state claims asserted (such as this Complaint) by providing a broad immunity, expressly preempting conflicting state laws and expressing exclusive federal jurisdiction for any remaining claims that require litigation due to "willful misconduct." *See Parker v. St. Lawrence Co. Pub. Health Dept*., 102 A.D.3d 140 (3[d] Dep't 2012).

56.     In a far narrower context (concerning H1N1) than COVID-19, the *Parker* decision found preemption when analyzing the applicable H1N1 PREP Act Declaration. This is significant because the *Parker* court found that the narrower H1N1 Declaration warranted an ***exclusive*** federal forum, and that ***state courts have no jurisdiction*** to hear claims arising out of, or concerning, a declaration issued pursuant to the PREP Act.  *Parker v. St. Lawrence Co. Pub. Health Dept*. is the only New York Appellate decision on PREP Act jurisdiction/preemption. This decision holds that only federal courts may address the significant federal legal issues in contention.

57.     The COVID-19 Declaration is far, far broader than the H1N1 Declaration. Remand to state court would risk invalidating the PREP Act scheme passed by Congress and rendering the sweeping federal immunity illusory. That is not the intent.

58.     The May 19, 2020 HHS Advisory Opinion further highlights how "[u]nder the PREP Act, immunity is broad" and "applies when a covered person engages in … any activity that is part of an authorized emergency response at the federal, regional, state or local level."  There is no distinction between action and inaction. This Opinion also counsels that "*PREP Act immunity must be read in light of the PREP Act's broad, express, preemption provision*."[7] (emphasis added).

59.     In fact, the October 23, 2020 Advisory Opinion[8] (page 7) flatly rejects a prior New York trial court ruling during the H1N1 virus, *Casabianca v. Mt. Sinai Medical Center*, 2014 WL 10413521 (New York Co. 12/12/14). The *Casabianca* court did not find the PREP Act applicable to a claim because it involved an omission (failure to provide an H1N1), not an affirmative act.

60.     The Advisory Opinion succinctly stated that, "(t)he court was wrong," because "administration" is broader than provision, and encompasses activities related to the management

---

[7] https://www.hhs.gov/sites/default/files/advisory-opinion-20-02-hhs-ogc-prep-act.pdf
[8] https://www.hhs.gov/sites/default/files/advisory-opinion-20-04-hhs-ogc-public-readiness-emergency-preparedness-act.pdf

and operation of programs and locations for providing countermeasures to recipients. The immunity applies to activities related to management and operation, including running a vaccine (or testing) program for COVID-19 such as those invoked by plaintiffs' Complaint. This triggers complete preemption and immunity under the PREP Act as to the claims asserted in this matter generally and as against the Brookdale Defendants.

61.     The Complaint is artfully plead to avoid the word "countermeasure" or to invoke the PREP Act by name. A careful review of the content, however, makes it clear that each cause of **_action arises out of, relates to, or results from_** specifically enumerated countermeasures under 42 U.S.C. §247d-6d(a).

62.     The text of the PREP Act expressly refers to "an act **_or omission_**" with respect to willful misconduct, *to wit*:

> (c) Definition of willful misconduct
> (1) Definition
>    (A) In general
> Except as the meaning of such term is further restricted pursuant to paragraph (2), the term "willful misconduct" shall, for purposes of subsection (d), denote an **_act or omission_** that is taken--
>        (i) intentionally to achieve a wrongful purpose;
>        (ii) knowingly without legal or factual justification; and
>        (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit.

42 U.S.C. §247d-6d (Emphasis added).

63. This section also states:

> (4) Defense for acts **_or omissions_** taken pursuant to Secretary's declaration:
>
> Notwithstanding any other provision of law, a program planner or qualified person shall not have engaged in "willful misconduct" as a matter of law where such program planner or qualified person acted consistent with applicable directions, guidelines, or recommendations by the Secretary regarding the administration or use of a covered countermeasure that is specified in the declaration under subsection (b), provided either the Secretary, or a State or local health authority, was provided with notice of

> information regarding serious physical injury or death from the administration or use of a covered countermeasure that is material to the plaintiff's alleged loss within 7 days of the actual discovery of such information by such program planner or qualified person.

42  U.S.C. §247d-6d (Emphasis added).

64.    The addition of "respiratory protective devices" to the list of Covered Countermeasures as well as PPE evidences the breadth of the PREP Act as applied to COVID-19 (especially as compared to prior emergency responses, such as H1N1). The inclusion of PPE expands the reach of the PREP Act, in terms of both immunity and preemption, because "*claims for loss* caused by, arising out of, *relating to*, or resulting from the administration to or *the use* by an individual of [PPE]" includes "the failure" to use PPE in order for immunity protection for this covered countermeasure to have any meaning. *See* 42 U.S.C. §247d-6d. (Emphasis added).

65.    The declaration by the HHS Secretary[9] sets forth an expansive immunity, which explicitly covers ___**omissions**___:

> Thus, it is the Secretary's interpretation that, when a Declaration is in effect, the Act precludes, for example, liability claims alleging negligence by a manufacturer in creating a vaccine, or negligence by a healthcare provider in prescribing the wrong dose, absent willful misconduct. Likewise, the Act precludes a liability claim relating to the management and operation of a countermeasure distribution program or site, *such as a slip-and-fall injury or vehicle collision by a recipient receiving a countermeasure at a retail store serving as an administration or dispensing location that alleges, for example, lax security or chaotic crowd control*. However, a liability claim alleging an injury occurring at the site that was not directly related to the countermeasure activities is not covered, such as a slip-and-fall with no direct connection to the countermeasure's administration or use.  In each case, whether immunity is applicable will depend on the particular facts and circumstances.

(Emphasis Added).

66.    Courts have interpreted the term "related to" to be <u>significantly broader</u> than simply "arising out of." *See Halyard Health, Inc. v. Kimberly-Clark Corp.*, 43 Cal. App. 5th 1062, 1081–

---

[9] https://www.phe.gov/Preparedness/legal/prepact/Pages/COVID19.aspx

82 (2019), *as modified* (Jan. 2, 2020); *See also Aviation Fin. Co. v. Chaput*, No. 14 CIV. 8313

(CM), 2015 WL 13203653, at *11 (S.D.N.Y. Mar. 12, 2015); *Nat'l Equip. Rental Ltd. v. Am. Pecco*

*Corp.,* 28 N.Y.2d 639, 641 (1971); *McClure v. Davis Wright Tremaine*, 77 Wash.App. 312 (Wash.

Ct. App. 1995) ["(a)n arbitration clause which encompasses any controversy 'relating to' a contract

is broader than language covering only claims 'arising out' of a contract."]

67.     The ordinary meaning of these words is broad: "to stand in some relation; to have

bearing or concern; to pertain; refer; to bring into association with or connection with." Black's

Law Dictionary 1158 (5th Ed. 1979).

68.     All claims in the Complaint are "relating to" covered countermeasures: inadequate

COVID-19 treatment; COVID-19 testing; treatment of respiratory distress and COVID-19 related

illnesses and conditions (pulmonary embolism, cardiac arrest). This requires federal resolution of

the scope/validity/application of the PREP Act. These issues have national implications so that

national consistency is needed. State-by-State analysis is insufficient and will create national

chaos.

69.     Notably, the Supreme Court has held that preemption provisions which include the

key phrase "relating to" express a "broad preemptive purpose" and "expansive sweep." *Morales*

*v. Trans World Airlines, Inc.,* 504 U.S. 374, 383–84 (1992).

70.     The importance of the "relating to" language was discussed in *Frey v. Bekins Van*

*Lines, Inc.,* 802 F. Supp. 2d 438 (E.D.N.Y. 2011), as it concerned the preemption of State law

claims by the Interstate Commerce Commission Termination Act (ICCTA). The Court held that

the inclusion of the term "relating to" evidences sufficiently broad language to justify Federal

preemption. *See e.g. American Airlines, Inc. v. Wolens,* 513 U.S. 219 (1995) [Airline Act

preempted actions brought pursuant to State consumer protection statutes]; *See also Huntington*

*Operating Corp. v. Sybonney Exp., Inc.,* 2010 WL 1930087 *3 (S.D.Tex. 2010) [dismissing State

law claims as preempted by ICCTA].

71.     The PREP Act also includes this broad and expansive "relating to" language:

(8) Preemption of State law:

… no State or political subdivision of a State may establish, enforce, or
continue in effect with respect to a covered countermeasure any provision of
law or legal requirement that—

(A) is different from, or is in conflict with, any requirement applicable under
this section; and

(B) ***relates to the*** design, development, clinical testing or investigation,
formulation, manufacture, distribution, sale, donation, purchase, marketing,
promotion, packaging, labeling, licensing, ***use***, any other aspect of safety or
efficacy, or the prescribing, dispensing, or administration by qualified
persons **of the covered countermeasure**, or to any matter included in a
requirement applicable to the covered countermeasure under this section or
any other provision of this chapter, or under the Federal Food, Drug, and
Cosmetic Act.

42 U.S.C. §247d-6d

72.     Accordingly, for the Complaint herein, there is a <u>dispositive presumption</u> in favor

of <u>both</u> preemption and immunity. The PREP Act was intended to preempt concurrent State claims.

*See Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003); *See also In Re WTC Disaster Site*,

414 F.3d 352, 380 (2d Cir. 2005); *Spear Marketing, Inc. v. BancorpSouth Bank*, 791 F.3d 586 (5th

Cir. 2015).

73.     Another exception to the well-plead rule applies when federal law is a <u>necessary</u>

<u>element of the claim for relief</u>. *See Grable & Sons Metal Products, Inc. v. Darue Engineering &*

*Mfg.*, 545 U.S. 308 (2005). Here, the essential elements of the Complaint include an interpretation

of the scope and immunities under the PREP Act (passed by Congress) to address the COVID-19

national emergency. These elements are: (1) whether defendants followed guidance by the

government; (2) whether that constitutes a covered countermeasure under the PREP Act; and, (3) acts arising out of, related to or resulting from COVID-19 treatment, COVID-19 testing and COVID-19 infection controls.

74.     The Government has a strong interest in maintaining a uniform, centralized federal determination as to the meaning/scope of the immunities/remedies under the PREP Act.

75.     This requires discrete interpretation of the federal statutory scheme, which is the sole province of the federal courts. Such a determination will not affect the federal-state division of court labor. The salutary intent behind the PREP Act will be fulfilled with uniformity. *See also Hopkins v. Walk*er, 244 U.S. 486 (1917).

76.     This exception to the well-plead rule has been adopted and enforced in the Second Circuit. *See New York ex rel Jacobson v. Wells Fargo National Bank, N.A.*, 824 F.3d 308 (2$^d$ Cir. 2016), where the Court stated, "[t]he doctrine captures the commonsense notion that <u>a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, *and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues*</u>…" (Emphasis included in original decision, internal citations omitted). *Id.* at 315.

77.     Plaintiffs' Complaint satisfies the four-factor test followed by the Second Circuit in *New York ex rel Jacobson v. Wells Fargo National Bank, N.A.*, 824 F.3d 308 (2$^d$ Cir. 2016). Federal jurisdiction lies if a federal issue is: (1) necessarily raised; (2) actually disputed; (3) substantial; and, (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. All four are patently met:

- (1) "Necessarily raised": Plaintiffs allegations all concern easily identified covered countermeasures as defined by federal law and guidance (COVID-19 testing, etc.). All claims require interpretation of whether they arise out of, relate to, or result from enumerated "covered countermeasures" under the PREP Act.

- (2) "Actually disputed": The filing of the Complaint in the New York Supreme Court, Kings County demonstrates the dispute since plaintiff is disputing the immunities bestowed by Congress under the PREP Act, and the applicability of the PREP Act to the aforementioned covered countermeasures.

- (3) "A serious federal interest in claiming the advantages thought to be inherent in a federal forum": The issues before this Court raise substantial questions as to the interpretation/validity of the PREP Act while concomitantly challenging the functioning of federal agencies (HSS, FDA etc.). This is a pure issue of law, which directly draws into question the scope/constitutionality of the PREP Act. This <u>mandates</u> federal jurisdiction. *See Hopkins*, 244 U.S. at 489-90, *Grable*, 545 U.S. at 315, *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921).

- (4) "Capable of resolution in federal court without disrupting the federal-state balance approved by Congress": Federal questions that implicate substantial federal interests (as here) are appropriately resolved in federal court. While New York State is permitted to regulate medical professionals and nursing homes, by passing the PREP Act, Congress explicitly preempted the realm of "covered countermeasures," set up a federal scheme of adjudicating claims that arise under the "covered countermeasures" and intentionally granted sweeping-and-broad immunities. Thus, a discrete role was legislatively carved out for federal adjudication.  New York (and all other states) are permitted to regulate their medical professionals and nursing homes beyond this tiny area of focus.

78.     Since all four prongs are met, jurisdiction is proper under well-settled Second Circuit law. *See NASDAQ OMX Group, Inc. v. UBS Securities, LLC, 770 F.3d 1010 (2$^d$ Cir. 2014); See also Broder v. Cablevision Systems Corp.*, 418 F.3d 187 (2005); *Tantaros v. Fox News Channel, LLC, 427 F.Supp.3d 488 (SDNY 12/17/19); Riseboro Community Partnership Inc. v. SunAmerica Housing Fund No. 682*, 401 F.Supp.3d 367 (EDNY 8/7/19).

## JURISDICTION EXISTS UNDER 28 U.S.C. §1442(a)(1)

79.     28 U.S.C. §1442(a)(1) <u>requires</u> removal when a defendant is sued for acts undertaken at the direction of a Federal Officer. This is to be broadly construed in favor of a federal forum. *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def Ass'n of Phila.*, 790 F.3d 457 (3$^d$ Cir. 2015).

80.     The Complaint tacitly invokes a failure to follow explicit federal COVID-19 infection control guidance concerning testing, detection and treatment. The Brookdale Defendants worked under strict regulation and guidance. As per the PREP ACT, the federal government delegated authority to like-situated healthcare providers to respond to the COVID-19 pandemic. Despite that delegation, the Brookdale Defendants labor under the strict supervision, regulation and guidance of federal authorities. As a result, the Brookdale Defendants were acting under the direction of Federal Officers warranting jurisdiction under 28 U.S.C. §1442(a)(1).

## CONCLUSION

81.     Every cause of action in this Complaint arises out of, relates to or results from "covered countermeasures" under the PREP Act (COVID-19 testing; COVID-19 respiratory devices; detection/treatment of COVID-19-related symptoms/conditions; and compliance with COVID-19 infection control mandates). The PREP Act provides complete preemption of this Complaint, the adjudication of which is subject to federal jurisdiction to determine the scope and applicability of the immunity, and the issue warrants jurisdiction since an interpretation of the PREP Act is a necessary element of the claim for relief. This complete preemption under the PREP Act warrants federal jurisdiction.

82.     As an alternative, federal jurisdiction is warranted as the Complaint falls under the Federal Officer Statute, 28 U.S.C. §1442(a)(1).

83.     The Brookdale Defendants will request leave to move for dismissal of this action in whole, or in part, under the PREP Act and New York State law immunities.

84.     A Notice of Filing of Notice of Removal will be filed in the Supreme Court of the State of New York, County of Kings, with copies served on counsel of record, pursuant to 28 U.S.C. §1446(a) and (d).

85.     By filing this Notice of Removal, the Brookdale Defendants do <u>not</u> waive any defenses, including without limitation, lack of personal jurisdiction, improper venue or forum, all defenses specified in FRCP Rule 12, or any other defense. The Brookdale Defendants demand a <u>trial by jury</u> on all issues raised in this litigation.

WHEREFORE, the Brookdale Defendants give notice that the above-captioned action now pending against them in the Supreme Court of the State of New York for the County of Kings is removed to this Court.

Dated: Valhalla, New York
      November 2, 2020

Yours, etc.,

VIGORITO, BARKER, PATTERSON,
NICHOLS & PORTER, LLP

By:    /s/ *Dylan Braverman*
      Dylan Braverman (DB 5501)
      (d.braverman@vbpnplaw.com)

By:    /s/ *Charles K. Faillace*
      Charles Faillace (CF 4001)
      (c.faillace@vbpnplaw.com)

By:    /s/ *Megan A. Lawless*
      Megan A. Lawless (ML 3227)
      (m.lawless@vbpnplaw.com)

115 E. Stevens Avenue, Suite 206
Valhalla, New York 10595
914-495-4805
VBPNP File No.:  0258-003

*Attorneys for Defendants*
*MARY TOUSSAINT-MILORD, M.D., KANIZ B.*
*BANU, M.D., MAHREEN AKRAM, M.D., JAMIE*
*CELESTIN-EDWARDS, CNM, and BROOKDALE*
*HOSPITAL MEDICAL CENTER*

TO:    Jordan Merson
        (jmerson@mersonlaw.com)
        MERSON LAW, PLLC
        *Attorneys for Plaintiffs*
        950 Third Avenue, 18th Floor
        New York, New York 10022
        212-603-9100

## CERTIFICATE OF SERVICE

This is to certify that on November 3, 2020, a copy of the foregoing **NOTICE OF REMOVAL** was served via e-mail upon:

Jordan Merson
(jmerson@mersonlaw.com)
MERSON LAW, PLLC
*Attorneys for Plaintiff(s)*
950 Third Avenue, 18th Floor
New York, New York 10022

Yours, etc.,

VIGORITO, BARKER, PATTERSON,
NICHOLS & PORTER, LLP

By:    /s/ *Dylan Braverman*

Dylan Braverman (DB 5501)
(d.braverman@vbpnplaw.com)
115 E. Stevens Avenue, Suite 206
Valhalla, New York 10595
914-495-4805
VBPNP File No.:  0258-003

*Attorneys for Defendants*
*MARY TOUSSAINT-MILORD, M.D., KANIZ B.*
*BANU, M.D., MAHREEN AKRAM, M.D., JAMIE*
*CELESTIN-EDWARDS, CNM, and BROOKDALE*
*HOSPITAL MEDICAL CENTER*

**UNITED STATES DISTRICT COURT**
**EASTERN DISCTRICT OF NEW YORK**                    DOCKET NO.:

---

**JEFFRY LEROY, as Co-Guardian of SILVIA LEROY, Incapacitated Person, SHIRLEY LICIN, as Co-Guardian of SILVIA LEROY, Incapacitated Person, and JEFFRY LEROY, Individually,**

*Plaintiff(s),*

*-against-*

**HEATHER HUME, M.D., MINDY BRITTNER, M.D., MIRA JOHN, .D., MOUNT SINAI HOSPITAL, MARY TOUSSAINT-MILORD, M.D., KANIZ B. BANU, M.D., MAHREEN AKRAM, M.D., JAMIE CELESTIN-EDWARDS, CNM, BROOKDALE HOSPITAL MEDICAL CENTER, JILL BERKIN, M.D., and KEVIN TROY, M.D.,**

*Defendant(s).*

---

### NOTICE OF REMOVAL

---

## VIGORITO, BARKER, PATTERSON, NICHOLS & PORTER, LLP
*Attorneys for Defendant*
*MARY TOUSSAINT-MILORD, M.D., KANIZ B. BANU, M.D., MAHREEN AKRAM, M.D., JAMIE CELESTIN-EDWARDS, CNM, and BROOKDALE HOSPITAL MEDICAL CENTER*
**115 E. Stevens Avenue, Suite 206**
**Valhalla, New York 10595**
**914-495-4805**
**VBPNP File No.: 0246-002**

---

**TO:   ALL PARTIES**