**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFRY LEROY, as Co-Guardian of SILVIA LEROY, Incapacitated Person, SHIRLEY LICIN, as Co-Guardian of SILVIA LEROY, Incapacitated Person, and JEFFRY LEROY, Individually,<br><br>Plaintiff,<br><br>v.<br><br>HEATHER HUME, M.D., MINDY BRITTNER, M.D., MIRA JOHN, M.D., MOUNT SINAI HOSPITAL, MARY TOUSSAINT-MILORD, M.D., KANIZ B. BANU, M.D., MAHREEN AKRAM, M.D., JAMIE CELESTIN-EDWARDS, CNM, BROOKDALE HOSPITAL MEDICAL CENTER, JILL BERKIN, M.D., and KEVIN TROY, M.D.,<br><br>Defendants. | Civil Action No.<br>1:20-cv-05325 |
| **NOTICE OF CONSENT AND JOINDER OF REMOVAL** | |

Defendants HEATHER HUME, M.D., THE MOUNT SINAI HOSPITAL (sued herein as "MOUNT SINAI HOSPITAL"), JILL BERKIN, M.D., and KEVIN TROY, M.D. (herein "Defendants"), by and through their undersigned counsel, and file this Notice of Consent and Joinder of Removal, for the reasons set forth below.

## I.      INTRODUCTION

1.      Defendants hereby join in the Notice of Removal filed on behalf of Co-Defendants BROOKDALE HOSPITAL MEDICAL CENTER, MARY TOUSSAINT-MILORD, M.D., KANIZ B. BANU, M.D., MAHREEN AKRAM, M.D. and JAMIE CELESTIN-EDWARDS, CNM (herein "Brookdale Defendants"), dated November 3, 2020, for the reasons stated therein.

2.      In addition to all reasoning set forth in the Notice of Removal dated November 3, 2020, Defendants submit that federal question jurisdiction is proper under 28 U.S.C.A. §§ 1331,

1

1367, 1441 and 1446, because the Complaint includes claims that fall within the ambit of 42 U.S.C.A. §§ 247d-6d, 247d-6e (the "PREP Act") and the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020), amended by 85 Fed. Reg. 21012 (Apr. 15, 2020), 85 Fed. Reg. 35100 (June 8, 2020), and 85 Fed. Reg 52136 (August 24, 2020) (herein, the "Declaration").

3.       Federal question jurisdiction is proper under the doctrine of "complete preemption." The PREP Act meets the criteria for complete preemption by broadly preempting all state law claims within its ambit and by providing an exclusive set of federal remedies.

4.       Federal question jurisdiction is also proper under the "embedded federal question" doctrine because the Complaint sets forth causes of action that necessarily turn on disputed questions of federal law and removal would further the congressionally-mandated division of state and federal interests under the PREP Act.

## II.       PROCEDURAL HISTORY

5.       Defendants join in the procedural recitation set forth in the Notice of Removal dated November 3, 2020, and the exhibits attached thereto providing a copy of all state court filings.

6.       Defendants file this Notice of Consent and Joinder of Removal within 30 days of receiving service of process, and also within 7 days of the Notice of Removal being filed.

7.       Upon information and belief, as of the time the Notice of Removal was filed on November 3, 2020, Co-Defendants MINDY BRITTNER, M.D., and MIRA JOHN, M.D., had not been properly served with process. Therefore, with consent of the Defendants herein, there is complete unanimity in removal for purposes of 28 U.S.C. § 1446.

8.       As of November 3, 2020, there were no Orders issued by the Supreme Court of New York, County of Kings.

2

9.      Removal to this venue is proper because the County of Kings lies within the jurisdictional boundary of the United States District Court for the Eastern District of New York.

10.     However, Defendants reserve all rights to contest venue as improper under the PREP Act, which provides exclusive jurisdiction to the District Court for the District of Columbia over any claim for "willful misconduct," which is the sole exception to immunity under the Act. 42 U.S.C. § 247d-6d(e)(1).

### III.      STATEMENT OF THE CASE

11.     Insofar as the Complaint asserts allegations against the Defendants, it asserts causes of action in (1) medical malpractice; (2) lack of informed consent; (3) loss of spousal services; and (4) negligent hospital privileging (against Defendant MOUNT SINAI HOSPITAL). All of these causes of action arise from a course of medical treatment allegedly rendered by Defendants from March 31, 2020 to May 7, 2020, while Incapacitated-Plaintiff SILVIA LEROY was admitted to Mount Sinai Hospital.

12.     The allegations underlying all causes of action are, in essence, that the Defendants failed to properly diagnose and treat COVID-19 and to properly monitor the patient for resulting oxygen saturation, pulmonary embolism, and stroke. More specifically, the Complaint asserts:

   a.      The "failure to timely and/or properly appreciate and **diagnose symptoms of COVID-19 infection**," (¶ 39, emphasis supplied);

   b.      The "failure to timely **test for COVID-19** given SILVIA LEROY's symptoms," (¶ 39, emphasis supplied);

   c.      The "**failure to properly and timely treat COVID-19 infection,**" (¶ 39, emphasis supplied);

d.     The "failure to timely and appreciate pulmonary embolism," and the "failure to properly and timely appreciate, diagnose, and/or treat pulmonary embolism," (¶ 39);

e.     The "failure to timely and properly appreciate heparin resistance" (¶ 39);

f.     The "failure to timely and properly administers, [sic] prescribe, recommend and/or dispense appropriate anticoagulant," (¶ 39);

g.     The "failure to properly monitor, improperly weaning oxygen," (¶ 39);

h.     The "failure to properly prevent cardiac arrest," (¶ 39);

i.     The "failure to diagnose clot," (¶ 39);

j.     The "failure to render timely and/or proper emergency, critical, hematological, and/or emergency, and/or pulmonary care," (¶ 39); and

k.     That Defendants "failed to inform plaintiffs' ward SILVIA LEROY of the risks, hazards, and alternatives connected with the procedures utilized and treatment rendered so that an informed consent could be given," (¶ 46).

13.    As set forth below, such allegations fall squarely within the ambit of the PREP Act, which provides federal immunity against "suit" and "liability" under State and Federal law for any claim for loss "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). Therefore, removal is proper on the basis of federal question jurisdiction.

## IV.    LEGAL ARGUMENT AND CITATION TO AUTHORITY

14.    This case is removable under 28 U.S.C. § 1441(a) on the basis of "original jurisdiction" because Plaintiff's Complaint asserts a claim "arising under" federal law within the meaning of § 1331.

4

**A. The Doctrine of "Complete Preemption" Applies to Any Claim Preempted Under the PREP Act Because the PREP Act (1) Expressly Preempts State Law Claims for Loss, and (2) Provides an Exclusive Set of Federal Remedies**

15.     On its face, Plaintiff's claims appear to sound in state law. However, Congress has already provided an exclusive remedy for Plaintiff's "claim for loss" under the PREP Act.

16.     The issue of whether federal question jurisdiction exists when a plaintiff asserts a claim in state law was addressed by the Supreme Court in *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1 (2003). The Court explained:

> [A] state claim may be removed to federal court … when a federal statute wholly displaces the state-law cause of action through **complete preemption**. When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. In the two categories of cases where this Court has found complete pre-emption … the federal statutes at issue **provided the exclusive cause of action** for the claim asserted and also **set forth procedures and remedies governing that cause of action**.

*Id.* at 8 (emphasis supplied; internal citations and footnotes omitted).

17.     There, the plaintiff brought an action for usury under state law, which was preempted by the usury provisions of the National Bank Act (12 U.S.C.A. §§ 85 and 86). The Court held that even though Congress did not explicitly provide for removal of preempted claims, the provisions collectively "supersede[d] both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive." *Beneficial Nat. Bank, supra,* at 11. Therefore, the court held that federal question jurisdiction was proper under the "complete preemption" doctrine.

18.     Since 2003, the doctrine of "complete preemption" has been applied by the lower courts to several statutes.[1] Circuit and district courts considering the issue have found "complete

---

[1] These include the Transportation Safety and System Stabilization Act (*In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005)); the Bankruptcy Code (*In re Miles*, 430 F.3d 1083 (9th Cir. 2005)); the Carmack Amendment to the

preemption" where a federal statute (1) expressly preempts state law and (2) creates an exclusive federal remedy for preempted state claims. *See, e.g., In re WTC Disaster Site*, 414 F.3d 352, 380 (2d Cir. 2005); *Spear Marketing, Inc. v. Bancorp South Bank*, 791 F.3d 586 (5th Cir. 2015); *Nott v. Aetna U.S. Healthcare, Inc.*, 303 F.Supp.2d 565 (E.D.Pa. 2004).

19.    The PREP Act plainly satisfies both prongs of this analysis. First, the PREP Act clearly preempts any state law that runs afoul of the immunity granted thereunder. Under 42 U.S.C.A. § 247d-6d(a)(1), a "covered person" is afforded broad immunity "from **suit and liability** under Federal **and State law**" for "**all claims for loss** caused by, arising out of, relating to, or resulting from" the "administration" or "use" of a "covered countermeasure" if the Secretary of the Department of Health and Human Services issues a declaration to that effect—which it has. (Emphasis supplied). Moreover, under 42 U.S.C.A. § 247d-6d(b)(8), state law that "is different from, or in conflict with, any requirement applicable under this section [§ 247d-6d] and relates to … the administration by qualified persons of the covered countermeasure" is expressly preempted, and this language would necessarily include enforcement of common-law through the a state tort system.

20.    Second, the PREP Act clearly establishes a set of exclusive federal remedies for any claim preempted, and also establishes the procedures applicable to such actions. Under 42 U.S.C.A. § 247d-6d(d)(1) "the sole exception to the immunity from suit and liability of covered persons … shall be for an exclusive Federal cause of action against a covered person for death or

---

Interstate Commerce Act (*see, e.g., Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115 (9th Cir. 2011)); the Interstate Commerce Commission Termination Act (*see, e.g., Elam v. Kansas City Southern Ry. Co.*, 635 F.3d 796 (5th Cir. 2011)); the Copyright Act (*see, e.g., Spear Marketing, Inc. v. BancorpSouth Bank*, 791 F.3d 586 (5th Cir. 2015)); the Federal Communications Act (*see, e.g., Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983 (7th Cir. 2000)); the Federal Deposit Insurance Act (*Vaden v. Discover Bank*, 556 U.S. 49, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009)); the Federal Railroad Safety Act (*see, e.g., Lundeen v. Canadian Pacific R. Co.*, 532 F.3d 682 (8th Cir. 2008)); the National Labor Relations Act (*see, e.g., Price v. Union Local 25*, 787 F. Supp. 2d 63 (D.D.C. 2011)); and the Securities Litigation Uniform Standards Act (SLUSA) (*see, e.g., Brockway v. Evergreen Intern. Trust*, 496 Fed. Appx. 357 (4th Cir. 2012)).

serious physical injury proximately caused by willful misconduct." Claims for "willful misconduct" are subject to several heightened pleading requirements. *Id.* § 247d-6d(e)(1)-(4). Moreover, any action for "willful misconduct" "shall be filed and maintained only in the United States District Court for the District of Columbia," and must be brought before a three-judge panel. *Id.* § 247d-6d(e)(1), (e)(5).

21.     An alternative remedy is also available for any claims barred by 42 U.S.C.A. § 247d-6d. Under § 247d-6e, an individual is permitted to claim no-fault benefits through the Covered Countermeasure Process Fund for a "covered injury directly caused by the administration or use of a covered countermeasure."

22.     In fact, even a claimant alleging "willful misconduct" must first apply for benefits through the Fund under § 247d-6e before bringing an action in the District of Columbia under § 247d-6d(d). § 247d-6e(d)(1).

23.     Therefore, it is clear that Congress sought to establish a set of exclusive federal remedies for claims that are preempted under the PREP Act.

24.     Here, both prongs of the "complete preemption" analysis are satisfied by the PREP Act: (1) Congress clearly intended to preempt state law with respect to claims that invoke PREP Act immunity; and (2) Congress clearly intended to create an exclusive federal remedy for such preempted claims. Therefore, any claim falling within its broad preemptive ambit is subject to removal under the doctrine of "complete preemption."

**B. The Complaint Asserts Claims that Fall Within the Scope of the PREP Act Because it Asserts Claims that "Arise from" and "Relate to" the Administration and Use of Covered Countermeasures during the COVID-19 Pandemic**

25.     The PREP Act broadly preempts "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered

countermeasure," brought "under Federal and State law," if the Secretary of HHS issues a declaration to that effect.

26.     On March 17, 2020, the Secretary of HHS issued a Declaration invoking the preemptive powers of the PREP Act and granting immunity to "covered persons" who engage in any "recommended activity." That Declaration was subsequently amended on April 15, 2020, June 8, 2020, and August 24, 2020, each time expanding the scope of immunity. The phrase "recommended activity" includes the "distribution, administration, and use" of "covered countermeasures."

27.     Under the PREP Act and the Declaration, the term "covered person" includes "program planners" and "qualified persons," and their officials, agents, and employees. 85 Fed. Reg. 15201. The phrase "qualified person," in essence, includes any person authorized to administer or use a covered countermeasure under state or federal law. 85 Fed. Reg. 15201-02. The phrase "program planner" includes individuals and entities who "supervise[] or administer[] a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration." 42 U.S.C. § 247d-6d(i)(6).

28.     Under the Declaration, as amended, the phrase "covered countermeasures" is broadly defined to include  "any antiviral, **any other drug**, any biologic, **any diagnostic**, **any other device**, or any vaccine, used:

> a.     "to **treat, diagnose,** cure, prevent, **or mitigate COVID-19**, or the transmission of SARS-CoV-2 or a virus mutating therefrom," or

b.      "**to limit the harm that COVID-19**, or the transmission of SARS-CoV-2 or a virus mutating therefrom, **might otherwise cause,**" or

c.      "any device used in the administration of any such product, and all components and constituent materials of any such product."

85 Fed. Reg. 35100 (Jun. 8, 2020) (at *35102) (dated June 4, 2020, and effective as of February 4, 2020) (emphasis supplied).

29.      Here, Plaintiffs effectively concede that Defendants are "covered persons" because they allege that all Defendants are either licensed physicians or hospitals, and were involved in the diagnosis, care, and medical treatment to Incapacitated-Plaintiff SILVIA LEROY, either acting on their own accord or through agents, servants, and/or employees. (Complaint ¶¶ 2-35). Thus, all of the named defendants and their agents, servants, and employees are "qualified persons" insofar as they are authorized under State law to provide medical care to diagnose, mitigate, and treat patients with COVID-19 and associated sequelae. Additionally, to the extent that Plaintiffs allege Defendants were responsible for supervising or administering a program with respect to countermeasure administration, or establishing requirements, guidance, or advice, or providing a facility for the administration of covered countermeasures, they effectively concede that Defendants were "program planners."

30.      Moreover, the expansive definition of "covered countermeasure" clearly includes *any* FDA-approved or authorized product used to diagnose and treat Plaintiff for COVID-19, and all such products used to diagnose and treat all associated sequelae (including the alleged pulmonary embolism, clotting, and stroke). This includes all medical equipment, all COVID-19 tests, and all drugs used to treat, diagnose, or mitigate COVID-19 and any associated sequelae.

31.     Therefore, the allegations contained in the Complaint that assert negligent diagnosis, care, and treatment of COVID-19 and associated sequelae clearly "arise out of, relate to, or result from" a "recommended activity" performed by a "covered person" relative to a "covered countermeasure" within the meaning of the PREP Act.

**C. Removal is Also Proper under the "Embedded Federal Question" Doctrine Because the Causes of Action Asserted Necessarily Turn on Disputed Questions of Federal Law and Removal would Further the Division of Adjudicative Authority Envisioned by Congress Under the PREP Act**

32.     Removal is also proper because Plaintiff's Complaint presents an "embedded federal question." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) *citing Grable & Sons Metal Prods. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005).

33.     As set forth in the Notice of Removal, the Second Circuit decision in *New York ex rel Jacobson v. Wells Fargo National Bank, N.A*., 824 F.3d 308 (2d Cir. 2016) sets forth the four criteria applicable to the "embedded federal question": (1) necessarily raised; (2) actually disputed; (3) substantial; and, (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. As the court explained "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, *and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues*…" (Emphasis original, citations omitted). *Id.* at 315.

34.     Here, all four criteria are met. Because the PREP Act provides the sole remedies for the claims advanced in the Complaint, the applicability of the PREP Act is both necessarily raised and actually disputed (unless Plaintiffs are willing to withdraw their claims). Also, to the extent that Plaintiffs claim that Defendants did not comply with federal guidance or regulations, or to the extent that Plaintiffs claim to have invoked the sole exception to the immunity provided

under the PREP Act, i.e., a claim for "willful misconduct" (42 U.S.C.A. § 247d-6d(d)), such issues necessarily turn on federal questions of law that are in dispute.

35.     Further, these issues are substantial insofar as they involve the effectiveness of the federal emergency response framework during a time of national (indeed, global) public health emergency. *See, e.g.,* 42 US.C. § 247d, *et seq.* (vesting broad powers in the Secretary of HHS to respond swiftly to meet a national public health emergency and to lead the national response).

36.     Finally, given the clear intent of Congress to have all claims falling within the scope of the PREP Act adjudicated exclusively in the two federal remedies provided (i.e., a claim for "willful misconduct" and a claim for no-fault benefits), adjudication of these issues in a Federal forum would actually *further* the "federal-state balance approved by Congress" by ensuring that "covered persons" who rely on the immunity under the PREP Act are afforded the "*experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.*" *Jacobson*, 824 F.3d at 315 (2d Cir.2016).

**WHEREFORE**, Defendants hereby consent to and join in the Notice of Removal filed November 3, 2020, on behalf of the Brookdale Defendants, for all reasons stated within said Notice and set forth above.

Dated:  New York, New York
        November 10, 2020

Yours, etc.,

AARONSON, RAPPAPORT, FEINSTEIN & DEUTSCH, LLP

By: Larry D. Bloomstein /s/
Larry D. Bloomstein (LB 0603)
(ldbloomstein@arfdlaw.com)

By: Peter J. Fazio /s/
Peter J. Fazio (PF 1211)

(pjfazio@arfdlaw.com)

600 Third Avenue
New York, New York 10016
212-593-6700

*Attorneys for Defendants*
THE MOUNT SINAI HOSPITAL, s/h/a MOUNT
SINAI HOSPITAL, JILL BERKIN, M.D., KEVIN
TROY, M.D., and HEATHER HUME, M.D.

cc:     Jordan Merson, Esq.
        MERSON LAW, PLLC
        *Attorneys for Plaintiffs*
        950 Third Avenue, 18th Floor
        New York, New York 10022
        (212) 603-9100
        (jmerson@mersonlaw.com)

        Vigorito, Barker, Patterson, Nichols & Porter, LLP
        *Attorneys for Defendants*
        MARY TOUSSAINT-MILORD, M.D., KANIZ B. BANU, M.D., MAHREEN AKRAM,
        M.D., JAMIE CELESTIN-EDWARDS, CNM, and BROOKDALE HOSPITAL
        MEDICAL CENTER
        115 E. Stevens Avenue, Suite 206
        Valhalla, New York 10595
        (914) 495-4805
        (d.braverman@vbpnplaw.com)

12