UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JEFFRY LEROY, as Co-Guardian of SILVIA LEROY, Incapacitated Person, SHIRLEY LICIN, as Co-Guardian of SILVIA LEROY, Incapacitated Person, and JEFFRY LEROY, Individually,

                        *Plaintiffs,*

            — against —

HEATHER HUME, M.D., MINDY BRITTNER, M.D., MIRA JOHN, M.D., MOUNT SINAI HOSPITAL, MARY TOUSSAINT-MILORD, M.D., KANIZ B. BANU, M.D., MAHREEN AKRAM, M.D., JAMIE CELESTIN-EDWARDS, CNM, BROOKDALE HOSPITAL MEDICAL CENTER, JILL BERKIN, M.D., and KEVIN TROY, M.D.

                        *Defendants.*

**No. 20-CV-5325 (ARR) (CLP)**

**Opinion & Order**

---

ROSS, United States District Judge:

Silvia Leroy suffered a severe case of COVID-19 in the spring of 2020 that left her with debilitating brain damage and quadriplegia. Plaintiffs Jeffry Leroy and Shirley Licin, Ms. Leroy's guardians, sued the medical personnel who treated her and their affiliated hospitals for medical malpractice, among other claims. Defendants removed the case to this court on the basis of federal preemption under the PREP Act, federal question jurisdiction, and federal officer jurisdiction. Plaintiffs now move to remand the case to state court. For the reasons set forth below, I grant plaintiffs' motion.

**BACKGROUND**

I.      **Case Background**

This case concerns the medical treatment that Silvia Leroy received as a patient of Brookdale Hospital Medical Center ("Brookdale") and Mount Sinai Hospital ("Mount Sinai") in the spring of 2020. Compl. ¶ 39, ECF No. 27-4. While Ms. Leroy was a patient at Brookdale, she was not tested for COVID-19 despite one of her doctors, defendant Mary Toussaint-Milord, M.D., requesting that she be so tested. *Id.* ¶ 36. While she was a patient at Mount Sinai, she suffered from pulmonary embolism, weaning oxygen levels, cardiac arrest and clotting. *Id.* ¶ 39. Ms. Leroy's illness resulted in serious permanent injuries including brain damage and quadriplegia. *Id.*

On October 7, 2020, plaintiffs Jeffry Leroy and Shirley Licin—Ms. Leroy's spouse and sister, respectively—sued defendants in state court for "reckless misconduct and wanton, willful, reckless and/or grossly negligent medical malpractice." *Id.* at 3.[1] In particular, plaintiffs alleged that defendants were "grossly negligent and acted with reckless disregard" in failing to test Ms. Leroy for COVID-19 and failing to timely and properly diagnose and treat her pulmonary embolism, oxygen shortage, cardiac arrest and clotting. *Id.* ¶¶ 36–40. Plaintiffs also allege lack of informed consent, loss of services for plaintiff Jeffry Leroy, and failures by Brookdale and Mount Sinai to investigate the "qualifications, competence, capacity, abilities and capabilities" of defendants. *Id*. ¶¶ 45–68.

Defendants removed the case to federal court on November 3, 2020. Notice of Removal 1, ECF No. 1. On January 8, 2021, plaintiffs filed the instant motion to remand this case back to state court. Mot. Remand, ECF No. 27.

---

[1] Although plaintiffs' complaint nominally asserts a cause of action "for reckless misconduct, wanton, willful, reckless, *and/or* grossly negligent medical malpractice" (emphasis added), plaintiffs do not assert any claims for "willful misconduct" as defined by the PREP Act in the substance of their complaint, *see* 42 U.S.C. §§ 247d-6d(c), 247d-6d(d)-(e).

## II.      The PREP Act

The PREP Act, enacted in 2005, authorizes the Secretary of Health and Human Services

("HHS") to provide immunity from liability to frontline healthcare workers and entities during a

public health emergency. The Act states:

> [A] covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration [by the Secretary of Health and Human Services] has been issued with respect to such countermeasure.

42 U.S.C. § 247d-6d(a)(1). The definition of a "covered person" under the PREP Act includes

manufacturers, distributors and program planners of covered countermeasures, as well as their

officials, agents and employees, and any "qualified person who prescribed, administered, or

dispensed" a covered countermeasure. *Id.* §§ 247d-6d(i)(2)(B). A "covered countermeasure"

means "a qualified pandemic or epidemic product"; "a security countermeasure"; a "drug . . . ,

biological product . . . , or device . . . that is authorized for emergency use in accordance with

section 564, 564A, or 564B of the Federal Food, Drug, and Cosmetic Act"; or a "respiratory

protective device that is approved by the National Institute for Occupational Safety and Health . .

. and that the Secretary determines to be a priority for use during a public health emergency

declared under section 247d of this title." *Id.* § 247d-6d(i)(1). A "qualified pandemic or epidemic

product" is defined as:

> [A] drug. . . , biological product, . . . or device . . . that is (i) manufactured, used, designed, developed, modified, licensed, or procured to (I) diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic or (II) limit the harm such a pandemic or epidemic might otherwise cause; (ii) . . . manufactured, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or condition caused by [such a drug, biological product, or device]; or (iii) a product or technology intended to enhance the use or effect of [such] a drug, biological product, or device.

*Id.* § 247d-6d(i)(7)(A).

"The sole exception" to immunity from liability under the PREP Act is a claim of "death or serious physical injury proximately caused by willful misconduct." *Id.* § 247d-6d(d)(1). Such claims may be brought in the United States District Court for the District of Columbia exclusively, after the plaintiff has exhausted administrative remedies. *Id.* §§ 247d-6d(e)(1), 247d-6e(d)(1). Otherwise, claimants whose causes of action are barred by the Act may seek compensation for their injuries from the "Covered Countermeasure Process Fund." *Id.* § 247d-6e(a). Federal and state courts do not have "subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary" in administering compensation from the Covered Countermeasure Process Fund. *Id.* § 247d-6e(b)(5)(C).

The PREP Act expressly preempts state laws that conflict with the terms of the Act, providing that:

> During the effective period of a declaration [by the Secretary], or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that–
>
> (A) is different from, or is in conflict with, any requirement applicable under this section; and
>
> (B) relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter, or under the Federal Food, Drug, and Cosmetic Act.

*Id.* § 247d-6d(b)(8).

On March 17, 2020, the HHS Secretary declared that the COVID-19 pandemic constitutes a public health emergency under the PREP Act. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 ("Declaration"). Since then, the Declaration has been amended seven times. *See* First

4

Amended Declaration, 85 Fed. Reg. 21,012 (Apr. 15, 2020); Second Amended Declaration, 85 Fed. Reg. 35,100 (June 8, 2020); Third Amended Declaration, 85 Fed. Reg. 52,136 (Aug. 24, 2020); Fourth Amended Declaration, 85 Fed. Reg. 79,190 (Dec. 9. 2020); Fifth Amended Declaration, 86 Fed. Reg. 7,872 (Feb. 2, 2021); Sixth Amended Declaration, 86 Fed. Reg. 9,516 (Feb. 16, 2021); Seventh Amended Declaration, 86 Fed. Reg. 14,462 (Mar. 16, 2021). These amendments have served to expand on and clarify the terms of the PREP Act in the context of the evolving COVID-19 pandemic.

## DISCUSSION

### I.     Removal Under 28 U.S.C. § 1441

A defendant may remove a state court action if the federal court has original jurisdiction over that action. 28 U.S.C. § 1441. In considering a motion to remand an action back to state court, the district court must "construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Hum. Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). Defendant bears the burden of establishing that removal is proper. *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004).

Under 28 U.S.C. § 1331, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Whether or not a cause of action arises under federal law "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, "[a] case may not be removed to federal court 'on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both

parties admit that the federal defense is the only question truly at issue in the case.'" *Shapnik v. Hebrew Home for Aged at Riverdale*, No. 20-CV-6774 (LJL), 2021 WL 1614818, at *8 (S.D.N.Y. Apr. 26, 2021) (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. For S. Cal.*, 463 U.S. 1, 14 (1983)). This is true "even where Congress has chosen to regulate the entire field of law in the area in question." *Id.* (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998)).

There are two exceptions to the well-pleaded complaint rule: (1) when "some substantial, disputed question of federal law is a necessary element" of a well-pleaded state-law claim and (2) when a claim "is 'really' one of federal law," despite being pleaded as a state-law claim. *Franchise Tax Bd.*, 463 U.S. at 13. Thus, "a plaintiff may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where plaintiff's suit is, in essence, based on federal law." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005).

### A.  Plaintiffs' claims are not completely preempted by the PREP Act.

Defendants argue that plaintiffs' claims, despite being pleaded as state-law claims, are really claims of federal law because they are completely preempted by the PREP Act. Mount Sinai Opp'n 22–30, ECF No. 30; Brookdale Opp'n 22–26, ECF No. 28. Complete preemption occurs "when Congress has . . . so completely preempted, or entirely substituted, a federal law cause of action for a state one that plaintiff cannot avoid removal by declining to plead necessary federal questions." *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010) (citation and quotation marks omitted); *see also Caterpillar*, 482 U.S. at 393 ("On occasion, the Court has concluded that the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule") (citation and quotation marks omitted). "[T]he complete-preemption doctrine must be

distinguished from ordinary preemption, also known as defensive preemption," *Sullivan*, 424 F.3d

at 272, because, as discussed above, "a case may *not* be removed to federal court on the basis of a

federal defense, including the defense of [ordinary] pre-emption, even if the defense is anticipated

in the plaintiff's complaint, and even if both parties concede that the federal defense is the only

question truly at issue," *Caterpillar*, 482 U.S. at 393.

The Supreme Court has recognized the doctrine of complete preemption in only three

cases: (1) Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185; (2)

Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a);

and (3) Sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85–86. *Dupervil v. All. Health*

*Operations, LCC*, No. 20-CV-4042 (PKC) (PK), 2021 WL 355137, at *8 (E.D.N.Y. Feb. 2, 2021).

The Second Circuit has also found that the Air Transportation Safety and System Stabilization Act

of 2001 ("ATSSSA") is a complete preemption statute. *In re WTC Disaster Site*, 414 F.3d 352,

375–80 (2d Cir. 2005)). "The commonality among all of these statutes is that they provide the

exclusive cause of action for the claim asserted and also set forth procedures and remedies

governing that cause of action." *Dupervil*, 2021 WL 355137, at *8 (citation and quotation marks

omitted). Thus, "to determine whether a federal statute completely preempts a state-law claim

within its ambit, we must ask whether the federal statute provides 'the exclusive cause of action'

for the asserted state-law claim." *Id.* (quoting *Sullivan*, 424 F.3d at 275–76).

As Judge Chen reasoned in her recent opinion in *Dupervil v. Alliance Health Operations*,

the PREP Act is distinguishable from these complete preemption statues because "the PREP Act

does not provide the exclusive cause of action for claims that fall within its scope; in fact, for the

most part, the Act provides no causes of action at all." 2021 WL 355137, at *9. "[T]he PREP Act

confers primary jurisdiction over most claims within its scope not to the federal courts but to the

Secretary, who has the sole authority to administer and provide compensation from a 'Covered Countermeasure Process Fund.'" *Id.* (citing 42 U.S.C. §§ 247d-6e(a), 247d-6e(b)). Claims involving willful misconduct are the only exception, and such claims may be brought exclusively in the United State District Court for the District of Columbia unless the plaintiff elects to accept compensation from the Process Fund instead of filing suit, and only after the plaintiff has exhausted administrative remedies. 42 U.S.C. §§ 247d-6d(d)(1), 247d-6d(e)(1), 247d-6e(d)(1), 247d-6e(d)(5). "Thus, except for one narrow exception, PREP Act claims cannot be brought in federal court." *Dupervil*, 2021 WL 355137, at *9.

In this way, the PREP Act resembles the Railway Labor Act ("RLA"), which the Second Circuit declined to recognize as a complete preemption statute. *Sullivan*, 424 F.3d at 276. In *Sullivan*, the Second Circuit held that the RLA does not completely preempt state-law claims within its scope because "primary jurisdiction over minor disputes under the RLA . . . exists solely in the adjustment boards established [under the statute]." *Id.* Thus, "[o]nce we recognize that a state-law based RLA minor dispute cannot be brought within the original jurisdiction of the federal courts and is thus not removable under § 1441, it becomes clear that the RLA does not completely preempt state-law claims that come within its scope." *Id.* Similarly, here, the PREP Act does not give this court original jurisdiction over the claims within its scope.

I am unpersuaded by defendants' citations to the HHS Secretary's Fifth Amended Declaration, 86 Fed. Reg. 7,872, and the HHS Office of General Counsel's January 8, 2021 Advisory Opinion, Mount Sinai Opp'n, Ex. O, ECF No. 30-16 ("Advisory Opinion 21-01"). In the Fifth Amended Declaration, the Secretary expanded the definition of "qualified persons" under the Act to include healthcare professionals administering COVID-19 vaccines and stated that "any State law that would otherwise prohibit the healthcare professionals who are a 'qualified person'

from prescribing, dispensing, or administering COVID-19 vaccines is preempted." 86 Fed. Reg. at 7,873. The Secretary went on to state, "The plain language of the PREP Act makes clear that there is complete preemption of state law as described above." *Id.* at 7,874.[2]

Defendants interpret this statement to mean that "the PREP Act is a complete preemption statute." Mount Sinai Opp'n 26. However, as Judge Chen concluded in *Dupervil*, the Secretary's use of "the term 'complete preemption' refers not to the doctrine of complete preemption for purposes of federal-question jurisdiction, but rather to ordinary, defensive preemption." 2021 WL 355137, at \*11 n.3. In other words, the PREP Act preempts any state law that would prohibit qualified persons from administering vaccines in the same way that the Act preempts any state law related to any other covered countermeasure that "is different from, or is in conflict with, any requirement" under the terms of the Act—that is, through ordinary preemption. 42 U.S.C. § 247d-6d(b)(8)(A).

Unlike the Fifth Amended Declaration, Advisory Opinion 21-01 does suggest that the PREP Act is a "complete preemption statute" for removal purposes. Advisory Opinion 21-01, at 2 (quotation marks omitted). The Opinion characterizes a complete preemption statute as one which "establishes either a federal cause of action, *administrative or judicial*, as the only viable claim or vests exclusive jurisdiction in a federal court." *Id.* (emphasis added). As discussed above, however, a federal administrative remedy, unlike an exclusive cause of action in federal court, does not trigger complete preemption, *see Sullivan*, 424 F.3d at 276, and the Opinion does not cite any case law in support of its suggestion otherwise. *See Dupervil*, 2021 WL 355137, at \*10.

---

[2] The Sixth and Seventh Amended Declarations removed the phrase "complete preemption" and stated, instead, "The plain language of the PREP Act makes clear that there is preemption of state law as described above." 86 Fed. Reg. at 9,517, 14,465.

Moreover, neither the Fifth Amended Declaration nor Advisory Opinion 21-01 is entitled to *Chevron* deference. *See Shapnik*, 2021 WL 1614818, at \*13; *Dupervil*, 2021 WL 355137, at \*10, 11 n.3. "[A]n agency's interpretation of a statute is entitled to *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Shapnik*, 2021 WL 1614818, at \*13 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001)) (quotation marks omitted). The Advisory Opinion expressly states that it "does not have the force or effect of law." Advisory Opinion 21-01, at 5. Therefore, "even assuming that Congress intended to delegate authority to the Secretary and HHS's Office of General Counsel 'generally to make rules carrying the force of law,' the Office of the General Counsel interpretation relied upon by Defendants here explicitly was not 'promulgated in the exercise of that authority' and is not entitled to *Chevron* deference." *Dupervil*, 2021 WL 355137, at \*10 (quoting *Mead*, 533 U.S. at 226–27)). Without *Chevron* deference, an agency opinion is "entitled to respect only to the extent it has the power to persuade," *Gonzales v. Oregon*, 546 U.S. 243, 256 (2006) (citation and quotation marks omitted), and the Advisory Opinion lacks such persuasive power here. As for the Fifth Amended Declaration, even if it did interpret the PREP Act to be a complete preemption statute, it still would not be entitled to *Chevron* deference because the PREP Act "unambiguously does not completely preempt state-law claims such that those claims really arise under federal law" and "deference is not due unless a court, employing traditional tools of statutory construction, is left with an unresolved ambiguity." *Dupervil*, 2021 WL 355137, at \*11 n.3 (quoting *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018)).

Defendants also cite a "statement of interest" filed by the United States in *Bolton v. Gallatin Ctr. For Rehab. & Healing, LLC*, No. 20-CV-683 (WDC), 2021 WL 1561306 (M.D. Tenn. Apr.

10

21, 2021), in which the United States argues that the PREP Act is a complete preemption statute. Mount Sinai Opp'n 30. In the statement, which defendants concede is "not controlling on this Court," *id.*, the United States compares the PREP Act to the "structurally similar" ATSSSA, which was deemed a complete preemption statute by the Second Circuit in *In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005), Statement of Interest, Mount Sinai Opp'n, Ex. Q, ECF No. 30-18. I reject this comparison for the same reason the court rejected it in *Bolton*, 2021 WL 1561306, at *7; *see also Dupervil*, 2021 WL 355137, at *10–11. The ATSSSA, like the PREP Act, created an administrative "Victim Compensation Fund to provide relief, without litigation, to individuals (or relatives of deceased individuals) physically injured or killed as a result of the September 11 aircraft crashes[.]" *In re WTC Disaster Site*, 414 F.3d at 373 (citing ATSSSA §§ 403, 405). However, as an alternative to relief from the Victim Compensation Fund, the ATSSSA also created a broad "federal cause of action for damages arising out of the hijacking and subsequent crashes," which must be brought in the United States District Court for the Southern District of New York, and stated that "this cause of action shall be the exclusive remedy for [those] damages." *Id.* at 374-75 (quoting ATSSSA § 408). By contrast, under the PREP Act, the Covered Countermeasure Process Fund is the exclusive remedy for claims arising out of the use or administration of a covered countermeasure with the narrow exception of claims for willful misconduct, which may be brought in the D.C. District Court only after administrative remedies have been exhausted. "Thus, whereas the ATSSSA permits a (specific) federal court to adjudicate ATSSSA claims fully on the merits under section 408 of that statute, the PREP Act permits no such thing." *Dupervil*, 2021 WL 355137, at *11.

Finally, Mount Sinai defendants argue that the court must assume that removal jurisdiction exists because the PREP Act grants appellate jurisdiction to the D.C. Circuit Court over "an

interlocutory appeal by a covered person . . . of an order denying a motion to dismiss or a motion for summary judgment based on an assertion of the immunity from suit conferred by [the PREP Act]." Mount Sinai Opp'n 29–30 (quoting 42 U.S.C. § 247d-6d(e)(10)). However, the fact that the PREP Act provides federal appellate jurisdiction for interlocutory appeals does not change the fact that it does not provide original federal jurisdiction for any claims other than those of death or serious physical injury proximately caused by willful misconduct.

Therefore, I adopt Judge Chen's reasoning in *Dupervil* and join the overwhelming consensus among district courts finding that claims similar to plaintiffs' are not completely preempted by the PREP Act. *See, e.g.*, *Garcia v. N.Y.C. Health and Hosps. Corp.*, No. 20-CV-9970 (CM), 2021 WL 1317178, at *1 (S.D.N.Y. Apr. 8, 2021); *Bolton*, 2021 WL 1561306, at *5–8; *Shapnik*, 2021 WL 1614818, at *10–16; *Padilla v. Brookfield Healthcare Ctr.*, No. 21-CV-2062 (DMG), 2021 WL 1549689, at *4–5 (C.D. Cal. Apr. 19, 2021) ("Nearly every other federal court addressing the issue of complete preemption has found that the PREP Act is not a statute with complete preemptive effect.") (collecting cases); *Elliot v. Care Inn of Edna LLC*, No. 20-CV-3185, 2021 WL 2688600, at *4 & n.1 (N.D. Tex. June 30, 2021) (collecting cases).

Only two cases have held otherwise. First, in *Garcia v. Welltower OPCo Grp. LLC*, the court found that "given [the] recent guidance [Advisory Opinion 21-01] . . . the PREP Act provides for complete preemption." No. 20-CV-2250 (JVS), 2021 WL 492581, at *7 (C.D. Cal. Feb. 10, 2021). However, as discussed above, I find that Advisory Opinion 21-01 is neither controlling nor persuasive. Furthermore, courts in the Ninth Circuit have repeatedly declined to follow *Garcia*, sometimes citing *Garcia*'s failure to apply the proper test for complete preemption. *See, e.g.*, *Acra v. Cal. Magnolia Convalescent Hosp., Inc.*, No. 21-CV-898 (GW), 2021 WL 2769041, at *5–6 (C.D. Cal. July 1, 2021) ("As other courts within this district have noted, *Garcia* did not consider

the Ninth Circuit's two-part complete preemption test") (collecting cases that declined to follow *Garcia*).

Second, in *Rachal v. Natchitoches Nursing & Rehab. Ctr. LLC*, the court compared the PREP Act to the ATSSSA and concluded that "the PREP Act is a complete preemption statute." No. 12-CV-334, 2021 U.S. Dist. LEXIS 105847, *3 n.3 (W.D. La. Apr. 30, 2021). As discussed above, I find that the PREP Act is crucially different from the ATSSSA, which provides an exclusive federal cause of action for all claims for damages arising out of the 9/11 aircraft hijackings and crashes in addition to creating an alternative administrative remedy in the form of a Victim Compensation Fund.

### B. Plaintiff's claims do not necessarily raise a substantial, disputed question of federal law.

Defendants also argue that regardless of whether the complete preemption doctrine applies, the case is removable because the interpretation of the PREP Act raises a "substantial federal question within the meaning of *Grable*." Mount Sinai Opp'n 31–34; *see also* Brookdale Opp'n 26–28. In *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, the Supreme Court held that federal jurisdiction exists where a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. 308, 314 (2005). Defendants rely on the Fourth Amended Declaration, which states that "there are substantial federal legal and policy issues, and substantial federal legal and policy interests . . . in having a uniform interpretation of the PREP Act." Mount Sinai Opp'n 32 (quoting the Fourth Amended Declaration, 85 Fed. Reg. at 79,197). Defendants also rely on Advisory Opinion 21-01, which advised that the Fourth Amended Declaration "provides the underlying basis for invoking the *Grable* doctrine." Mount Sinai Opp'n 34 (quoting Advisory Opinion 21-01, at 5).

13

I disagree and follow the courts in this Circuit which have held that that similar state-law claims have not necessarily raised a substantial federal question. *See Dupervil*, 2021 WL 355137, at \*14; *Shapnik*, 2021 WL 1614818, at \*14; *Garcia v. N.Y.C. Health and Hosps. Corp.*, 2021 WL 1317178, at \*1. As Judge Liman explained in *Shapnik*, plaintiffs' claims "could not be more different from [those in] *Grable*." 2021 WL 1614818, at \*14. In *Grable*, which dealt with an action to quiet title which implicated the notice provision of the Internal Revenue Code, the Supreme Court found that the plaintiff had "premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law" and, thus, the federal question "was an essential element of its quiet title claim." 545 U.S. at 314–15. Here, by contrast, the PREP Act is raised only as an immunity defense, and "the immunity question is not an element of [p]laintiffs' state-law causes of action." *Shapnik*, 2021 WL 1614818, at \*14; *see also Dupervil*, 2021 WL 355137, at \*14. Thus, plaintiffs' state-law claims do not "necessarily raise" a substantial federal issue.

## II.      Removal Under 28 U.S.C. § 1442(a)(1)

Under the federal-officer removal statute, a case may be removed if it is against (1) the United States; (2) any agency of the United States; or (3) "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under the color of such office." 28 U.S.C. § 1442(a)(1). Removal is proper under the third category where defendants (1) "are persons [including corporate persons] within the meaning of the statute who acted under a federal officer"; (2) "performed the actions for which they are being sued under the color of federal office"; and (3) "raise a colorable federal defense." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135–36 (2d Cir. 2008) (citation and quotation marks omitted). The phrase "acting under" is "to be interpreted broadly" and, in general, the statute "must be liberally construed." *Id.* at 136.

14

Here, Brookdale defendants argue that removal is proper under the federal-officer removal statute because defendants were "acting under the direction of federal officers with respect to COVID-19 testing protocols" and, in particular, following guidelines from the Centers for Disease Control and Prevention ("CDC") as to identifying which patients should be tested. Brookdale Opp'n 29. This argument fails. "[S]imply *complying* with [federal] law" is not enough to constitute "acting under" a federal officer. *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 152 (2007). Even a "highly regulated" defendant must show more than "federal regulation alone." *Id.* at 153. Instead, a defendant must show that a "special relationship" of "delegation" exists between the federal entity and themselves. *Id.* at 157; *see also Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 586 F. App'x 604, 607 (2d Cir. 2014) (summary order) (noting a defendant "must demonstrate that the assistance it provides to a federal officer 'goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks'" (quoting *Watson*, 551 U.S. at 153)). In *Isaacson v. Dow Chem. Co.*, for example, the court found that such a "special relationship" existed where "[d]efendants contracted with the Government to provide a product that the Government was using during war—a product that, in the absence of Defendants, the Government would have had to produce itself." 517 F.3d 129, 137 (2d Cir. 2008).

In the present case, by contrast, defendants have merely shown that they were complying with federal directives. Without showing that a "special relationship" of delegation exists, defendants have not established that they are persons "acting under" a federal officer for the purposes of the federal-officer jurisdiction statute. *See Dupervil*, 2021 WL 355137, at *16 (finding that defendants, a nursing home and certain of its employees, failed to show that they were anything more than "highly regulated" private persons complying with federal laws pertaining to COVID-19, and that therefore the federal-officer removal statute did not apply); *see also Garcia*

15

*v. N.Y.C. Health and Hosps. Corp.*, 2021 WL 1317178, at *2 (collecting cases finding "that hospitals that are following federal guidelines during the current pandemic emergency are not 'acting under' federal officers for the purpose of federal officer jurisdiction").

**CONCLUSION**

Thus, given that none of defendants' arguments for removal jurisdiction prevails,[3] I grant plaintiffs' motion for remand.


SO ORDERED.

Dated:      August 12, 2021                    ____/s/_____
            Brooklyn, NY                       Allyne R. Ross
                                               United States District Judge

---

[3] Because I find that there are no grounds for removal in this case, I will not address the question of whether plaintiffs' claims trigger immunity under the PREP Act.